PEOPLES BANK AND TRUST COMPANY, Executor of the Estate of Norman L. Marxen, Deceased, Plaintiff,

v.

PIPER AIRCRAFT CORPORATION, Defendant.

No. 84–8331–CIV.

United States District Court, S.D. Florida, N.D.

Dec. 7, 1984.

John Davidson, Chicago, Ill., for plaintiff.

Joseph Womack, Miami, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

The issue raised in this case is whether, under the "significant relationships test", the law of Ohio—where the plaintiff decedent lived, and purchased and hangared his airplane—or the law of Florida—where the defendant airplane company now resides—should be applied in resolving the legal issues arising out of decedent's fatal airplane crash in Ohio. Defendant Piper Aircraft Corporation ("Piper Aircraft" or "Piper") has moved to apply Ohio law, while plaintiff argues that the law of Florida should control. The court has considered the arguments raised by the parties, as well as the relevant case law, and has concluded that the law of Ohio shall be applied in these proceedings.

■ A federal district court sitting in a diversity case must apply the choice-of-law rules of the forum in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1541 (11th Cir.1983). Thus, this court must rely on Florida law in resolving the conflicts questions presented in this case.

Florida, like many states, originally used the rule of *lex loci delicti*, or law of the place of wrong, to resolve choice-of-law questions. When this rule proved to rigid and harsh, the Supreme Court of Florida replaced it with the "significant relationships test" in *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980).

Under the "significant relationships test", a reviewing court must take into account the contacts and policies of the subject forums as set forth in sections 6, 145 and 146 of the Restatement (Second) of Conflict of Laws.

The "Choice of Law Principles" delineated in section 6 include:

(1) A court, subject to constitutional restriction, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectation,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Section 145 reads:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Id. § 145.

Finally, section 146 counsels that

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Id. § 146.*

The presumption borne of the "significant relationships test" is that the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest in the parties or the events. *Bishop*, 389 So.2d at 1001. Courts typically pay lip service to the other factors listed in sections 6 and 145 of the Restatement (Second), but it is the conduct of the parties and the interests of the states from which flows these other factors. In other words, once the relevant state policies and contacts are identified, it is relatively easy to conclude that the application of the law of one forum or another is predictable, certain and uniform.

．　　．　　．　　．　　．

Defendant in the instant case seeks to have this court apply the law of the State of Ohio, while plaintiff counters that the law of Florida should control. Resolution of this issue has significant implications, for plaintiff submits that it is unclear whether punitive damages are available under Ohio law, while such relief is permitted under Florida law.

As the following recitation of the facts in this case demonstrate, Ohio has substantially more contacts with the events and parties than does Florida.

The genesis of this case was the crash of a Piper Aerostar airplane in Ohio. The airplane involved was manufactured in California, purchased in Ohio by an Ohio corporation, hangared in Ohio, and the fatal trip was scheduled to begin and end in Ohio. Less clear is the place where the conduct causing the crash occurred. Plaintiff alleges that defendant negligently designed the Piper Aerostar, Complaint ¶ 3 (filed June 28, 1983), which by their own admission occurred in California. *Id.* ¶ 2. Plaintiff also contends that defendant negligently developed and sold parts for and promulgated and maintained rules governing the use of the Aerostar aircraft first in California, and later in Florida (where defendant relocated). Plaintiff also avers that defendant negligently and intentionally delayed safety improvements to the Aerostar airplane after learning of its dangerous defects and tendencies. This latter act or omission is alleged to have occurred before plaintiff crashed and while defendant resided in Florida.

Turning next to the citizenship of the parties, the deceased was a citizen of Ohio at the time of his death. Defendant is a Florida resident with its principal place of business in that state.

．　　．　　．　　．　　．

The shift from the rule of *lex loci delicti* to the "significant relationships test" was in part necessary because, under the former rule, a court would have to apply the law of a forum whose contacts with the events and the parties were purely fortuitous. All that has changed in Florida since the Florida Supreme Court rendered its decision in *Bishop*. In that case, the supreme court applied Florida law in a case involving the crash in North Carolina of an airplane carrying Florida citizens who were

---

* The Restatement (Second)'s discussion of choice-of-law analysis as regards wrongful death actions also is relevant. Section 175 provides:
  Right of Action for Death. In an action for wrongful death the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship un-

der the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
  Restatement (Second) of Conflict-of-Laws § 175 (1971). Section 178 reads:
  Damages. The law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death.

headed from Florida to South Carolina. Similarly, Florida law was applied in *Harris v. Berkowitz*, 433 So.2d 613 (Fla. 3rd DCA 1983), a case in which Florida residents who were driving a Florida-registered vehicle and insured by a Florida carrier were killed in a car crash in Maine. The district court of appeal also applied Florida law in *Proprietors Insurance Co. v. Valsecchi*, 435 So.2d 290 (Fla.3d DCA 1983), which involved the crash in North Carolina of an airplane rented in Florida and carrying Florida residents. In each of these cases, the court held that the contacts of the non-Florida forum with the event and the parties was happenstance; the car or planes could have crashed in any state along the way.

In this case, however, the crash of Mr. Marxen's airplane in Ohio was not fortuitous, but could reasonably be expected (to the extent that it unfortunately had to happen at all) because the deceased lived in the state, kept his plane there, and was flying from one point to another in Ohio when he met disaster. Under *Bishop*, these facts militate strongly in favor of applying Ohio law. Another Florida decision, *State Farm Mutual Automobile Insurance Co. v. Olsen*, 406 So.2d 1109 (Fla.1981), supports this view. In *State Farm*, the supreme court applied Illinois law to a personal injury action arising out of a car accident in Illinois between an Illinois resident and a Florida resident who was insured by a Florida carrier. After noting that Florida law provided for comparative negligence while in Illinois contributory negligence applied, the court found that "Illinois has an interest in the rights of its citizens who are subject to subrogation by the insurer on any uninsured motorist coverage it pays, which interest ... is paramount to the relevant policies of Florida as a forum." *Id.* at 1111.

The *State Farm* decision makes clear that a choice-of-law analysis does not stop with an examination of the subject forums' contacts with the events and parties. Rather, a court must proceed to consider whether a forum other than the one where the injury occurred has policies which are legally more significant to the underlying occurrences and parties than the interests of the forum where the injury took place.

The two state interests which are of principal concern in this case are the availability and nature of compensatory and punitive damages.

The state in which Mr. Marxen resided before his death has a substantial interest in the nature and extent of his compensatory relief. By living and working in Ohio, Mr. Marxen availed himself of the rights and duties of being an Ohio citizen. One such right is the ability of the deceased and his beneficiaries to be compensated for their injuries. Compared to Ohio, Florida has a low interest in seeing that Mr. Marxen's beneficiaries receive their proper distribution of his compensatory award. Plaintiff Peoples Bank and Trust Company opened an ancillary estate in Florida following Mr. Marxen's death, and some of defendant's wrongdoings occurred in Florida, but the relationship between Mr. Marxen and Piper Aircraft is centered in Ohio. Recall that Mr. Marxen was an Ohio citizen; his plane was purchased and hangared in Ohio; and his plane crashed while flying from one location to another in Ohio. For the most part, then, the acts or omissions for which plaintiffs now seek compensatory relief arose out of defendant's breach of duties imposed by Ohio law, and thus Ohio law should be applied to determine the nature and extent of plaintiff's compensatory award.

Far more problematic is whether Ohio or Florida law should be applied with respect to punitive damages. The decision to permit recovery of punitive damages reflects a legislative judgment to punish wrongdoers and deter future misconduct. *See In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 610, 614 (7th Cir.1981). Florida courts permit punitive damages. *See Martin v. United Security Services, Inc.*, 314 So.2d 765 (Fla.1975). Conversely, those states which prohibit punitive damages have chosen to protect resident defendants from excessive financial liability thereby

encouraging corporate migration. *Air Crash*, 644 F.2d at 610, 614. Although the Supreme Court of Ohio has not yet decided whether the state's new wrongful death statute permits the recovery of punitive damages, the court did rule that the statute's predecessor did not authorize such an award. *See Rubeck v. Huffman*, 54 Ohio St.2d 20, 374 N.E.2d 411 (1978).

Admittedly, Florida has a strong interest in applying punitive damages. Piper Aircraft resides and does business in Florida, and the state has an interest in promoting airplane safety. The threat of punitive damages undoubtedly affects Piper's corporate behavior and provides another layer of protection for the public. A state's policy regarding punitive damages is meant to either police or promote corporate activity, and thus a state in which a corporation resides and does business has a stronger interest in applying its punitive damages policy than does a state in which the corporation does business but does not reside. On that basis, Ohio has a weaker interest than Florida in applying its law on punitive damages.

But Ohio, like Florida, not only has a substantial interest in promoting airplane safety, but it also has a strong interest in not suffering airplane crashes which kill its own citizens. Certainly, the Ohio legislature could have foreseen such a scenario, and thus whatever decision the Supreme Court of Ohio makes on the availability of punitive damages should be given considerable weight. Given the plethora of contacts that Piper has with Ohio, it is reasonable to give equal importance to that state's policy regarding punitive damages. Overall, then, "under the 'most significant relationship' test, when there is a true conflict between laws of states having equal interests in the issue of punitive damages, and when the place of injury has a strong interest in air safety and in protection of air transportation corporations, the law of the place of injury will apply." *Air Crash*, 644 F.2d at 616. In *Air Crash*, a California-bound American Airlines (Delaware corporation with principal place of business in New York and misconduct in Oklahoma)

DC–10 designed and manufactured by McDonnell Douglas Corporation (Maryland corporation with principal place of business in Missouri and misconduct in California) crashed shortly after takeoff from an airport in Chicago, Illinois. Significantly, Illinois—the forum whose law was largely applied in the case—prohibited the recovery of punitive damages. In the instant case, Ohio courts may ultimately decide not to permit punitive damages, but its law should still apply.

If defendants such as Piper Aircraft can escape punitive damages even when so significantly connected to a forum where it does not reside or conduct most of its business, then certainly many corporations would set up their principal place of business in those states which prohibit the recovery of punitive damages. This would undermine the policies of those states who seek to police corporate activity which harms their own citizens. Furthermore, deciding the choice-of-law issue with regard to punitive damages solely on the basis of which state enables a plaintiff to recover more money has no principled basis in law, for it disregards the most important aspect of the "significant relationship" test: the contact of the states with the events and the parties. As explained by one Florida court,

> [t]he law of conflicts cannot rest upon the proposition ... that *lex loci* applies when it is more generous than the state of the survivors' residence.[6]

---

6. If "greatest recovery" were the sole criterion, any state with any arguable tangential interest in the litigation could be arbitrarily selected by any plaintiff. It is also improbable that the supreme court intended to confer the greatest liability upon the airline in every case.

*Proprietors*, 435 So.2d at 297 & n. 6.

The instant case presents a more difficult choice-of-law problem than most cases because defendant does have a legally significant contact with Florida. The question is further complicated because Florida permits punitive damages whereas Ohio has not answered the question as it relates to its new wrongful death statute. In resolv-

ing the issue, however, the court is continually drawn back to the contacts of the respective forums with the occurrences and the parties. Without question, Ohio has the more important relationship to this case. Undoubtedly, one can formulate a legal construct that produces a different result, but this court is convinced that a rigorous reading of the applicable law requires the application of Ohio law. This result passes constitutional muster, because Ohio has significant contacts or a significant aggregation of contacts which create state interests with both the parties and the occurrence such that choice of its law is neither arbitrary nor fundamentally unfair. *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981).

Accordingly, it is hereby ORDERED AND ADJUDGED that defendant's motion to apply Ohio law be and the same is hereby GRANTED.