**Deborah EMMART, etc., et al., Plaintiffs,**

v.

**PIPER AIRCRAFT CORPORATION and Teledyne Continental Motors, etc., Defendants.**

Nos. 85–6321–Civ, 85–8708–Civ and 85–1419–Civ.

United States District Court, S.D. Florida, Miami Division.

May 7, 1987.

Roger L. Blackburn, Miami, Fla., Harry A. Wilson, Jr., Indianapolis, Ind., for plaintiffs.

Henry Burnett, Miami, Fla., for Piper Aircraft.

Ralph Richard, Calvin David, Miami, Fla., Michael L. Kelley, Los Angeles, Cal., for Teledyne.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO APPLY INDIANA LAW

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on Defendants', PIPER AIRCRAFT CORPORATION and TELEDYNE CONTINENTAL MOTORS, Motion to Apply Indiana Law in these consolidated actions involving a plane crash in Indiana, in which three Indiana residents, who at the time of the crash were either employees or officers of a distributor of Defendant Piper Aircraft Corporation ("Piper"), were killed. Under Florida conflicts of law principles, which this Court must apply, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the "significant relationships test" has superceded the former rule of *lex loci delicti* to determine which law to apply in a case such as that presented here. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980). Defendants urge this Court to apply Indiana law, which does not allow for the recovery of punitive damages. Given that Florida does allow for the recovery of punitive damages, Plaintiffs naturally urge the Court to apply Florida law. This Court agrees with Defendants on the record before it, and therefore GRANTS their Motion.[1]

### I

"The presumption borne of the 'significant relationships test' is that the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest in the parties or the events." *Peoples Bank*

---

**1.** There were actually two motions filed, one by each Defendant. This Order treats them as one since both seek the same relief for similar reasons.

& *Trust Co. v. Piper Aircraft Corp.*, 598 F.Supp. 377, 379 (S.D.Fla.1984); *accord Bishop*, 389 So.2d at 1001 ("The conflicts theory set out in the Restatement does not reject the 'place of injury' rule completely. The state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law."). The test is set forth in the Restatement (Second) of Conflict of Laws §§ 145–46 (1971). These provisions state:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and,

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 146. Personal Injuries

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws §§ 145–46 (1971).

Section 6 of the Restatement enumerates the following factors as important choice of law considerations in *all* areas of law:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Additional guidance is found in sections 175 and 178 of the Restatement:

§ 175 Right of Action for Death.

In an action for wrongful death the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

§ 178 Damages.

The law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death.

Restatement (Second) of Conflict of Laws §§ 175, 178 (1971).

The test allows a court to make a more rational determination regarding the applicable law in a given situation. And, as one division in this district has stated:

Courts typically pay lip service to the other factors listed in § 6 and 145 of the Restatement (Second), but it is the conduct of the parties and the interests of the states from which flows these other factors. In other words, once the relevant state policies and contacts are identified, it is relatively easy to conclude that the application of the law of one forum or another is predictable, certain and uniform.

*Peoples Bank & Trust Co.*, 598 F.Supp. at 379. This Court agrees. *Cf. United*

*States v. Anaya,* 509 F.Supp. 289, 293 (S.D. Fla.1980) (en banc) (doctrine of intra-court comity establishes as a general rule that, absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings).

## II

This Court is of the opinion that under these principles Indiana has more significant relationships to the issues presented, particularly the availability of punitive damages. There is no question that the place of injury is Indiana. This locale is not as fortuitous as Plaintiffs would have this Court believe it is. The flight in question began in Indiana bound for Ohio with a scheduled return to Indiana. The plane crash occurred in Indiana while en route to Ohio. Thus, the only fortuity would be that the plane crash occur in one of the two contiguous states, and the state of departure could reasonable be expected to be that state. In any event, neither Indiana nor Ohio allow for the recovery of punitive damages in a case such as this. Additionally, the decedents were all residents of Indiana at the time of the crash; the aircraft was hangered in Indiana for use by a Piper distributor pending retail sale; and the aircraft was carrying employees and officers of a Piper distributor. This is similar to the situation presented in *Peoples Bank & Trust Co.* wherein the court noted that the plane crash in that case was not fortuitous "but could reasonably be expected ... because the deceased lived in the state, kept his plane there, and was flying from one point to another in Ohio when he met disaster." *Peoples Bank & Trust Co.,* 598 F.Supp. at 380.

The place where the conduct causing the injury occurred has proved to be the most difficult question in this case. Isolating this conduct at such an early stage in the proceedings necessitated a hearing in this matter, which ultimately was held on March 5, 1987. What became absolutely certain to this Court during the hearing was that the real issue in the case centers on the availability of punitive damages based on the allegedly negligent design,

manufacturing and testing of a "cold weather starting kit" ("kit"), also known as the "optional primer system." This kit was designed, manufactured and developed by Defendant Teledyne Continental Motors ("TCM") and incorporated by Piper as an option on aircraft intended to be used in cold weather climates, including the Piper Turbo Arrow IV, N4355N, the accident aircraft in this case. The Plaintiffs accordingly sued both TCM and Piper, the engine manufacturer and aircraft manufacturer, respectively. In fact, the Plaintiffs admit that:

> The *principal* cause for this, and many other accidents, began in the 1960's when TCM moved from Muskegon, Michigan, to Mobile, Alabama. In designing the TSIO 360, TSIO 520 and other engines, TCM did so in the warm temperate climate of Mobile, as opposed to winter and adverse conditions of most of the USA. It neglected to test to see whether this series of engines would start in chilly temperatures (below 40°). Thus, Piper Aircraft with TCM Ts10–360 engines outside Florida or California, would not start. TCM tried to remedy this problem, but put in a diverter valve instead of a primer valve. The aircraft will then start but inadvertent operation of the valve during flight causes the engine to quit. This resulted in many crashes.

Plaintiffs' *Highlights of Significant Contacts* at 1–2 (emphasis added). After the hearing the Court is certain that it is this conduct surrounding the kit which the Plaintiffs believe is the wrongful conduct worthy of punitive damages.

There is no doubt but that the bulk of this conduct regarding the design, testing and manufacturing of this kit occurred *neither* in Florida nor Indiana, and so balances equally on both sides of the equation. TCM's headquarters are, as Plaintiffs admit, in Mobile, Alabama. The testing of the cold weather starting kit was done, predictably, in cold weather; Minnesota, Pennsylvania and Point Magu, California, in 1975 and 1976. *See Id.* at 2, ¶ 5, 7; Plaintiffs' *Memorandum of Law in Opposition to Defendants' Motion* at ¶ 8, 9, 10;

*Deposition of Edward F. Austin,* taken September 16, 1986, at 95, 98–99. Although the mating of the engine into the aircraft was performed in Florida, the design, development and testing of the engine took place in Alabama. Plaintiff's *Memorandum of Law in Opposition to Defendants' Motion* at 2, ¶ 5, 6, 7, 8. Additionally, the certification process for the engine centered its activity in Alabama. Plaintiffs' *Highlights* at 3, ¶ 10. Defendant TCM also represented to the Court at the hearing that the kit was installed as an option in Florida but was manufactured in Alabama with parts from all over the United States.

Moreover, to a significant degree Plaintiffs have not focused on the real conduct that would justify an award of punitive damages. In this regard the Court agrees with Defendant TCM that "[i]f any conduct exists which should be punished by the Court, it would be the alleged act of continuing to market a defective kit with knowledge of its defects and the act of failing to warn." Defendant TCM's *Response to Plaintiffs' Motion to Compel* at 3. This conduct would reflect on Defendant TCM, the company that manufactured the kit to begin with. Given that the purpose of punitive damages is to punish wrongdoers and deter future misconduct, *Peoples Bank & Trust Co.,* 598 F.Supp. at 380, Plaintiffs would have to show, especially insofar as Defendant TCM is concerned, conduct on its part which occurred in Florida so as to justify Florida's interest in punishing them. The conduct by TCM, if any, which would justify an award of punitive damages does not appear to have taken place in Florida, therefore, Florida has no interest in punishing a foreign corporation for this alleged conduct.

The last two factors which this Court should consider under § 145 concern the residence or place of business of the parties and the place where the relationship, if any, between the parties is centered. Upon consideration, these factors weigh in favor of applying Indiana law. The decedents were all residents of Indiana at the time of the crash and were either employees or officers of a distributor of Defendant Pip-

er. Defendant TCM has its principal place of business in Mobile, Alabama, although Defendant Piper has its principal place of business in Florida. Thus, the only contact with Florida as far as this factor is concerned is that of Piper. The others refer the Court back to Indiana or weigh equally.

If any "relationship" exists between the parties, it is more likely centered in Indiana. All decedents were residents of Indiana at the time of the crash and worked in some capacity for Piper. They were also on Piper related business at the time of the crash. Defendant Piper's *Motion* at 6; Plaintiffs' *Highlights,* at 3, ¶ 11. The aircraft was also hangered in Indiana by a Piper distributor pending retail sale.

This Court's inquiry cannot, however, end here. As Judge Jose Gonzalez noted:

> [A] choice of law analysis does not stop with an examination of the subject forums' contacts with the events and parties. Rather, a court must proceed to consider whether a forum other than the one where the injury occurred has policies which are legally more significant to the underlying occurrences and parties than the interests of the forum where the injury took place.

*Peoples Bank & Trust Co.,* 598 F.Supp. at 380. As in *Peoples Bank & Trust Co.,* the two state interests which are of primary concern in this case are the availability and nature of compensatory and, more importantly, punitive damages. *Id.* This Court is of the opinion that Indiana law should be applied to both.

Indiana has a greater interest than Florida with regard to the compensatory relief afforded the decedents' beneficiaries in this case. As in *Peoples Bank & Trust Co.,*:

> The state in which [the decedents] resided before [their] death[s] has a substantial interest in the nature and extent of [their] compensatory relief. By living and working in [Indiana], [the decedents] availed [themselves] of the rights and duties of being an [Indiana] citizen. One such right is the ability of the deceased and [their] beneficiaries to be compensated for their injuries. Compared to

[Indiana], Florida has a low interest in seeing that [the decedents'] beneficiaries receive their proper distribution of [their] compensatory award[s].

*Id.* Accordingly, Indiana law should be applied to the compensatory relief sought.

The Court is also of the opinion that Indiana law ought to be applied regarding the issue of punitive damages. Florida's decision to allow the recovery of punitive damages reflects a legislative judgment to punish wrongdoers and deter future misconduct. *Id.* Indiana, like Ohio in *Peoples Bank & Trust Co.*, prohibits such awards. This view reflects a legislative decision to protect resident defendants from excess financial liability, thereby promoting corporate migration. *Id.* at 380–81.

> Overall, then, "under the 'most significant relationship' test, when there is a true conflict between laws of states having equal interests in the issue of punitive damages, and when the place of injury has a strong interest in air safety and in protection of air transportation corporations, the law of the place of injury will apply."

*Id.* at 381 (quoting *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 616 (7th Cir.1981)). This would be Indiana.

### III

The Court realizes the significant effect its decision today has on the ultimate recovery, if any, by the Plaintiffs in this action. The Court is also aware of the substantial amount of time it will ultimately take to try this case before a jury. Rather than engage in such a process only to find out later that Plaintiffs should have been entitled to recover punitive damages, the Court is of the opinion that an immediate appeal of this Order may materially advance the ultimate termination of the litigation, and upon the taking of such an appeal by the Plaintiffs, will stay these proceedings pending its outcome. In this regard, the Court is of the opinion that from the Plaintiffs' perspective, the Order involves a controlling question of law as to which there could be a substantial ground for difference of opinion. Accordingly, Plaintiffs may pursue an appeal of this order within ten (10) days, pursuant to 28 U.S.C. § 1292(b).