720 F.Supp. 1445 (1988)
In re AIR CRASH DISASTER AT STAPLETON INTERNATIONAL AIRPORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.
Hugh FORD and Julia Ford
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Brenda A. SELLEH and J. Mark Selleh
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Diane Mae McELHENEY and Gary McElheney
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Libby SMOOT
v.
CONTINENTAL AIRLINES CORP.
Kathleen A. COOPER and Dale Cooper, husband and wife
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Karen Svea JOHNSON and Robert Cooke, Jr., wife and husband
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Shirley Jean WELTZ and Marvin Richard Weltz, wife and husband
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Christopher DAVIS, a minor, by Jerry DAVIS and Linda Davis, and Jerry Davis, individually
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Angela TLUCEK, a minor, by Jerry TLUCEK and Mary Lou Tlucek, and Jerry Tlucek and Mary Lou Tlucek, individually
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Wayne DAVIS
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
David DANIEL
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Robert O. LINCK and Joanne Linck, his wife
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Deborah PASCHKOV, for herself, and as guardian ad litem for Melissa Richard
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Patti L. HALFORD and Donald M. Halford
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Jeffrey HOAGLAND, a minor, by Mark W. HOAGLAND and Marie Hoagland
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Ann C. STEWART, for John McCabe STEWART, a minor, Donald Douglas Stewart, Lueann Stewart, and Linda Butterfield, widow
v.
CONTINENTAL AIRLINES CORP., Texas Air Corp.
Keith SMITH and Loretta Smith
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
v.
Byron OWENS (subject to realignment).
Micheal SPICER
v.
CONTINENTAL AIRLINES CORP.
Douglas SELF and Debbie Self
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp., jointly and severally.
MDL No. 751, Nos. 87-F-1922, 88-F-346, 88-F-348, 88-F-661, 88-F-663 to 88-F-665, 88-F-667, 88-F-668, 88-F-670, 88-F-671, 88-F-787, 88-F-830 to 88-F-832, 88-F-898, 88-F-990, 88-F-991 and 88-F-1358.
United States District Court, D. Colorado.
November 15, 1988.

*1447 ORDER MDL 751-16
MEMORANDUM OPINION AND ORDER ON STATE LAW CONTROLLING ISSUES OF PUNITIVE DAMAGES
SHERMAN G. FINESILVER, Chief Judge.
This multidistrict action deals with damages claimed as a result of injuries and fatalities incurred in an airplane crash on November 15, 1987 in Denver, Colorado. The instant matter involves motions pre-trial determination of the law controlling issues of punitive damages. Through substantial briefing and oral argument, the parties have advanced and criticized contentions that the law of Colorado, Idaho or Texas should prevail. The court conducted independent research of the legal authority regarding the complex choice of law questions and carefully reviewed the submissions of the parties.
We find that Texas has the most significant relationship to punitive damage claims in this litigation and thus hold that Texas law applies to these claims. Defendants' corporate accountability, if any, is best evaluated by the application of Texas law.

I.
By way of background, these cases arise out of the November 15, 1987 crash of a Continental Airlines DC-9 airplane en route from Denver, Colorado, to Boise, Idaho. During a snow storm at Stapleton International Airport, Continental Flight 1713 crashed as it attempted take-off. The aircraft overturned and the passenger compartment broke into several pieces. The accident killed 28 persons and injured 54 others. The pilot, copilot and a flight attendant were among the deceased. Actions pending in this court are for both personal injury and wrongful death.
Plaintiffs are residents of various states, including Arizona, Colorado, Idaho, New Jersey, and Washington. They claim the crash of Flight 1713 was the result of pilot inexperience, ineffectual pilot training and the willful, wanton and reckless disregard for passenger safety exhibited by defendant Continental Airlines. Plaintiffs contend that Continental engaged in a pattern and practice of falsifying pilot training records, check airmen, and other records in order to meet its demand for newhire pilots and to pass Federal Aviation Administration ("FAA") inspections. Plaintiffs further contend that the actions of employees at Continental's dispatch center violated FAA regulations regarding inclement weather operations and that these violations were due to the fact that dispatchers responsible for Flight 1713 and other Denver departures were stationed in Houston, Texas, rather than Denver.[1]
Defendants deny that negligence or any wrongdoing caused the crash. Defendants assert that plaintiffs' damages were caused by the acts, omissions, and/or fault of third parties over whom Continental has no control. *1448 Specifically, defendants have designated the City and County of Denver and the Federal Aviation Administration as culpable parties pursuant to § 13-21-111.5 of the Colorado Revised Statutes. Defendants also contend that if the acts of any Continental employees caused the crash, those acts were limited to the decisions of the cockpit and de-ice crews stationed in Denver, Colorado.
The court has jurisdiction over these civil actions pursuant to 28 U.S.C. § 1332, diversity of citizenship. On April 14, 1988, the Judicial Panel on Multidistrict Litigation conferred jurisdiction upon this court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. In re Air Crash Disaster at Stapleton Int'l Airport, 683 F.Supp. 266 (J.P.M.L.1988).

II.
A transferee court presiding over diversity actions consolidated as multidistrict litigation must apply the choice of law rules of the various jurisdictions in which the transferred actions were originally filed. In re Air Crash Disaster Near Chicago, Illinois, 644 F.2d 594, 610 (7th Cir.), cert. denied sub nom., 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); In re Eastern Airlines, Inc., Engine Failure, 629 F.Supp. 307, 315 (S.D.Fla.1986); see also Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (choice of law of the forum to be applied); VanDusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (law applied in 28 U.S.C. § 1404 transfers). The actions pending before this court were commenced in Idaho, Colorado and New Jersey.
New Jersey applies "government interest analysis" to choice of law problems. See Veazey v. Doremus, 103 N.J. 244, 510 A.2d 1187 (1986). Idaho and Colorado apply the "most significant relationship" analysis codified at §§ 145 et seq. of the Restatement (Second) of Conflict of Laws. First National Bank v. Rostek, 182 Colo. 437, 514 P.2d 314 (1973); Johnson v. Pischke, 108 Idaho 397, 700 P.2d 19 (Idaho 1985). Because the latter test is a more formalized approach to the interests considered in the former, we consolidate our analysis under the Restatement approach to identify the state with the most significant relationship to the parties and the occurrence.[2]
The parties presenting choice of law motions on the issue of punitive damages contend that Idaho, the residence of most of the injured passengers, Colorado, the site of the crash, and Texas, the principal place of business and corporate residence of defendants, each have interests in this litigation. Our analysis begins with a comparison of the punitive damages law of each jurisdiction to determine whether a conflict exists upon which choice of law principles must be brought to bear. Chicago, 644 F.2d at 605. If a conflict exists, the interests of each state in a potential award of punitive damages in this case must be weighed to determine which state bears the most significant relationship to the issue.[3]

*1449 III.
The punitive damage laws of Texas, Idaho and Colorado are in irreconcilable conflict. The laws of Idaho and Texas provide for punitive damages in wrongful death actions as well as contract and personal injury cases.[4] Colorado law provides for punitive damage awards only in personal injury casesexemplary damages are prohibited in actions for wrongful death or breach of contract.[5] While the amount of punitive damages awarded in Texas and Idaho must bear some relation to the circumstances and injury suffered, neither state imposes a maximum on the amount of an award. By statute, Colorado limits the amount to be awarded to the amount of actual damages incurred in the underlying injury unless specific circumstances are proven at trial. While courts in both Texas and Idaho admit evidence of a defendant's wealth as a basis for calculating the size of a punitive damage award, Colorado statutory law prohibits introduction of such evidence. Furthermore, although all three states generally apply similar standards to determine liability for punitive damages, Colorado law requires that the plaintiff prove that standard beyond a reasonable doubt.
During the past decade, the Colorado legislature has substantially reformed the state's tort law. Colorado statutes now limit availability of punitive damage remedies and the amount of such an award. Colorado's tort reform manifests a balancing of the policies of deterrence and punishment against the interests of protecting resident corporations and the local economy. See 1986 Report of the Governor's Task Force on the Insurance Crisis (Colo. Advisory Panel 1986); In re Air Crash Disaster Near Chicago, Illinois, 644 F.2d 594, 613 (7th Cir.), cert. denied sub nom., 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); see also Peoples Bank & Trust v. Piper Aircraft Corp., 598 F.Supp. 377, 380 (S.D.Fla.1984); Sibley v. KLMRoyal Dutch Airways, 454 F.Supp. 425, 428 (S.D.N.Y.1978).
When such a conflict of policy exists, there can be no "moderate or restrained interpretation" which would serve to avoid a true conflict of laws. Chicago, 644 F.2d at 615. Accordingly, we proceed to determine which law should apply to these cases.

IV.
The Restatement (Second) of Conflicts approach applied in each of the transfer jurisdictions suggests a two step choice of law analysis of the issues involved. The first step is an identification of the states having contacts with the parties and the crash of Flight 1713.[6] The second step is a determination of the relative significance of these contacts made by considering six elements set out in the Restatement.

*1450 A. The Situs of Relevant Contacts.

All but one of the contacts relevant to this litigation are in dispute.[7]

1. Place of Injury.

Plaintiffs were injured when Flight 1713 crashed on take-off from Continental Airlines' connection "hub" for the western United States at Denver, Colorado.

2. Place of Conduct.

Colorado and Texas provide the most prominent locality of the conduct to be considered in this litigation. We are persuaded that the conduct for which Continental may be liable for punitive damages occurred primarily in Texas. In Colorado, Idaho and Texas, corporate liability for punitive damages is not based purely on the theory of vicarious liability for the actions of ones employees. Note, Corporate Vicarious Liability for Punitive Damages, 1985 B.Y.U.L.Rev. 317, 318 and n. 8. Corporate liability for punitive damages requires the complicity or involvement of corporate principals in the specific occurrence at issue in the litigation.[8] Only if that complicity is wanton and willful will a corporation be liable for punitive damages. The Restatement of Law's focus on the policy goals of rules regulating conduct requires consideration of the conduct to which liability would attach in each jurisdiction.[9]
Plaintiffs contend that their case for punitive damages turns on (a) negligent hiring of the pilots assigned to Flight 1713, (b) decisions to "pair" the pilots assigned to that flight, (c) training of flight and deice crews, and significantly (d) responsibilities and participation of Continental's Houston, Texas flight dispatch center in the departure of Flight 1713. Defendants contend that plaintiffs' case actually focuses on the decisions of the flight and deice crews in Denver, Colorado, and that plaintiffs' remaining contentions merely allege predisposing acts of negligence.[10]
The corporate activity causally linked to the departure of Flight 1713 occurred in Texas. Defendants concede that Federal Aviation Regulations vest substantial responsibility in an airline's dispatch center to monitor flight crew preparation, ground crew activities, and weather conditions, to communicate pertinent information to the flight crew, and to certify the aircraft's readiness by formally releasing it for departure. 14 C.F.R. 121.533 & 121.591-.667 (1988). While we express no view on the alleged involvement of the FAA in alerting *1451 Continental to deficiencies at its dispatch center, we find it significant that the government agency views dispatch center operations as critical to the safe departure of each flight. Such operations are not analogous to the training programs other courts have appeared to dismiss as merely peripheral to the causes of a particular accident. See, e.g., In re Air Crash Disaster at Washington, D.C., 559 F.Supp. 333, 349 (D.D.C.1983); In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985, slip. op., MDL 657 (N.D.Tex. Sept. 22, 1988). This case differs in that the decisions and actions upon which liability for punitive damages turn are not limited to the pre-flight decisions of the flight and ground crews in Denver. Compare Freeman v. World Airways, Inc., 596 F.Supp. 841, 846-47 (D.Mass.1984) with In re Air Crash Disaster Near Chicago, Illinois, 644 F.2d 594, 613-14 (7th Cir.), cert. denied sub nom., 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981) (Missouri manufacturing operations of California corporation focus of conduct analysis).
Whether the dispatch center or personnel managers located in Texas acted responsibly in regard to the preparation and departure of Flight 1713 is a matter for trial. What is clear is that this corporate conduct potentially giving rise to an award of punitive damages occurred in Texas. See Emmart v. Piper Aircraft Corp., 659 F.Supp. 843, 846 (S.D.Fla.1987).

3. Domicile and Principal Place of Business.

In air crash cases, the residence of plaintiffs is generally of little significance as to the issue of punitive damages. Chicago, 644 F.d at 612-13; Freeman, 596 F.Supp. at 848; Jackson v. K.L.M., 459 F.Supp. 953, 955 (S.D.N.Y.1978); Sibley v. KLM-Royal Dutch Airlines, 454 F.Supp. 425, 428 (S.D. N.Y.1978); see also Washington, D.C., 559 F.Supp. at 353 (significance of minor factor increases when residence is also state of injury). The interests of the domicile state are served by application of that state's law to see that plaintiffs are fully compensated for their injuries and that they do not become dependent on the state. Id. In this litigation, individual compensatory damage trials applying the law of a plaintiff's domicile will be held following exemplar trial on issues of liability and punitive damages.[11] Accordingly, we find that the interests of plaintiffs' domicile states are protected and reject the assertion of certain plaintiffs that Idaho has the most significant interest in the parties or occurrence.
Continental contends that it has more than one principal place of business relevant to our choice of law analysis. An airline's principal place of business is its "corporate nerve center." Chicago, 644 F.d at 620; Dallas, slip op. The fact that an aircraft crashes at its owner's "hub" increases the weight afforded the significance of the relationship between the state of injury and the occurrence. Courts do not view an airline's "hub" as its principal place of business.[12]Id. Defendants concede that their corporate nerve center is located in Houston, Texas. Furthermore, Continental and Texas Air are incorporated under the laws of the state of Texas. Texas is defendants' principal place of business.

4. Center of the Parties' Relationships.

Generally, courts find that the relationship between a passenger and a carrier is centered either in the flight's point of departure or point of return. Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190, 1195 (1985); Freeman, 596 F.Supp. at 848; Rest. (Second) Conflict of Laws § 145, comment e. The significance of Denver as the point of passenger departure in this case, however, is lessened by the fact that the majority of passengers boarding Flight 1713 were routed through Denver to connect with that flight by Continental or another *1452 airline. Most were returning on round trip tickets from Boise, Idaho to states other than Colorado. Most purchased their tickets in Boise. Accordingly, as it regards most passengers, Idaho is the state where the relationship was centered.

V.
As discussed above, the states having relevant contacts with this litigation are: 1) Coloradoplace of injury; 2) Texasplace of the wrongful conduct; 3) Texasdefendant airline's principal place of business and state of incorporation; and 4) Idaho principal state where the relationship between the parties was centered. The relative significance of these contacts is considered in light of the policies underlying the remedy of punitive damages.[13]
In personal injury and wrongful death actions, the language of the Restatement of Conflicts suggests that the law of the state of injury should apply unless some other state has a more significant relationship to the litigation. See Washington, D.C., 559 F.Supp. at 350; Rest. (Second) Conflict of Laws §§ 146 and 175. In air crash cases, the Restatement's suggestion is easily overcome because courts view the situs of injury as fortuitous.[14]See Chicago, 644 F.2d at 615; Pittway Corp. v. Lockheed Aircraft Corp., 641 F.2d 524, 527-28 (7th Cir.1981); In re Air Crash Near Chicago, 500 F.Supp. 1044, 1048 (N.D.Ill.1980) (lower court opinion later reversed in part on other grounds); In re Air Crash at Boston, Mass., 399 F.Supp. 1106, 1112 (D.Mass.1975); Bryant, 703 P.2d at 1195. When an air crash occurs on landing or take-off, some courts find that additional contacts with the site of injury raise the significance of that relationship. See Chicago, 644 F.2d at 615; Washington, D.C., 559 F.Supp. at 348-50; Freeman, 596 F.Supp. at 847; Dallas, slip op.[15] In our view, the crash at Stapleton International Airport was less than fortuitous. Continental's substantial flight operations at this airport in the Rocky Mountain region raise the likelihood of a weather effected crash in this region. See Washington, D.C., 559 F.Supp. at 344. Nonetheless, the combination of factors allegedly causing the accident could have occurred at any airport where pilots and the Houston dispatch center were forced to monitor preparations for take-off in inclement weather, e.g. Boise, Idaho, Cheyenne, Wyoming, etc. Accordingly, the significance of the relationship between Colorado and this litigation is less than that normally attributed to the site of injury in other tort cases. See Florum v. Elliot Mfg. Co., 629 F.Supp. 1145, 1148 (D.Colo.1986).
In air crash cases, the interests of the domicile of the plaintiffs and the center of the relationship is relatively low in regard to the issue of punitive damages. Bryant, 703 P.2d at 1195; Chicago, 644 F.2d at 612; Freeman, 596 F.Supp. at 848; Washington, D.C., 559 F.Supp. at 353; Rest. (second) Conflict of Laws § 145, comment e. Accordingly, the significance of *1453 the relationship of Idaho to this litigation through these two contacts does not surpass that of Colorado.
Texas, however, has the most significant relationship to the parties and occurrence in regard to the issue of punitive damages. If any rule can be identified from the various air crashchoice of law cases, it is that articulated by the Seventh Circuit in Chicago:
Because the place of injury is much more fortuitous than the place of misconduct or the principal place of business, its interest in and ability to control behavior by deterrence or punishment, or to protect defendants from liability is lower than that of the place of misconduct or the principal place of business.
644 F.2d at 615; Washington, D.C., 559 F.Supp. at 355-57; Bryant, 703 P.2d at 1194; K. Redden, L. Schlueter, Punitive Damages § 3.3(F) (1981 & Supp.1986); Note, Conflict of Laws, 47 J. of Air L. & Comm. 339 (1982). The rule is in accord with the Restatement's guidance that in regard to rules of conduct, the predominant consideration focuses on the policies of the relevant states. Rest. (Second) Conflict of Laws § 145, comment c, § 6(2) & (3); see also Dresser Industries, Inc. v. Sandvick, 732 F.2d 783, 786 (10th Cir.1984); see also Bryant, 703 P.2d at 1194-95 holding corporation accountable to its principal place of business serves choice of law interests in certainty, predictability and expectation); Rest. (Second) Conflict of Laws § 6(4) & (5). Texas is both the site of the conduct to which an award of punitive damages could attach and defendants' principal place of business thus its relationship to this litigation is most significant. See Emmart v. Piper Aircraft Corp., 659 F.Supp. 843, 845-46 (S.D.Fla.1987).
A comparison of the interests of Colorado and Texas further substantiates this conclusion. While Colorado has an interest in regulating the conduct of corporations entering its jurisdiction to do business, it interest in air safety is somewhat lessened when a foreign corporation attempts to shield itself from the more onerous laws of its home state by seeking refuge under Colorado law. See Chicago, 644 F.2d at 613-14; Bryant, 703 P.2d at 1195-96. The shared goal of safe air travel is served by applying the law of a home state to an airline like Continental. See id. Furthermore, Colorado's decision to maintain its economy will not be frustrated by applying the law of Texas. The knowledge that the law of a corporation's principal place of business and responsible operations will be applied in the event of litigation is not likely to discourage corporations like Continental from doing business in Colorado. Id.; cf. Freeman, 596 F.Supp. at 847 (damage award against company domiciled in country which does not allow such damages discourages entry).[16]
Finally, application of Colorado law would prejudicially frustrate the progress of this litigation. The Restatement of Conflicts advises a court to consider the relative ease of determination and application of each state's law. Rest. (Second) § 6(6). The parties have jointly proposed a trial plan common to mass disaster cases. See In re Air Crash Disaster at Gander, Newfoundland, on December 12, 1985, MDL 683, slip ops. (W.D.Ky. July 17, 1987 & August 28, 1987); In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985, MDL 657, slip op. (N.D.Tex. June 13, 1988). Once pretrial proceedings in these consolidated cases have been completed, these cases will be consolidated for determination of liability for actual and punitive damages through an exemplar case. At trial, if the jury finds Continental liable for punitive damages, that jury will determine the amount of the award in a second phase of the trial. The individual cases will then be transferred to the districts in which they were filed for compensatory damage trials. This court will retain jurisdiction over the punitive damage award for a final determination of the propriety of the amount awarded. Continental's interest in this procedure is not only one of convenience, but *1454 also in eliminating the risk of prejudicially disparate liability verdicts which might result from determinations of liability in each of those individual trials. Colorado law requires precise calculation of a punitive damage award based on the amount of actual damages awarded in a personal injury case.[17] Texas law requires that the award bears a factual relationship to the injuries, circumstances, and conduct involved. Colorado law requires severance of claims at the liability phase of this litigation.[18] Continental would then be exposed to the injustice consolidation procedures attempt to avoid where several plaintiffs allege injuries stemming from the same acts of one defendant.
Accordingly, the law of Texas will apply to issues of punitive damages in these consolidated cases.

VI.
Defendants have also moved for the dismissal of punitive damage claims brought in actions originally filed in state and federal courts in Idaho. By statute, Idaho provides that punitive damage claims may only be brought once the trial court grants leave to amend the complaint following a hearing on the sufficiency of the claims. Idaho Code § 6-1604(2). Federal courts sitting in diversity in Idaho hold that the provision is substantive law that controls the course of state law trials in that jurisdiction. Windsor v. Guarantee Trust Life Ins., 684 F.Supp. 630, 633 (D.Idaho 1988). Because we find the substantive law of Texas controls issues of punitive damages in this litigation, defendants' motion to dismiss based on Idaho law is moot.[19]

VII.
The choice of law problems inherent in air crash and mass disaster litigation cry out for federal statutory resolution. We urge Congress to pursue enactment of uniform federal tort law to apply to liability and damages in the context of commercial airline disasters and other mass torts.[20] While the issues we address are significant due to the current posture of federal law, the burden these decisions place on judicial resources frustrates the early and orderly resolution of issues which should demand greater attentioncompensating the victims or vindicating accused commercial entities.[21] Specifically, state laws on the issue *1455 of punitive damages are not harmonious. Uncertainty on the choice of law question requires a considerable expenditure of time, money and other resources on the by litigants and counsel. Federal law would eliminate costly uncertainty and create uniformity. This approach would lead to a quick and efficient resolution of mass disaster cases. See Fed.R.Civ.P. 1.

ORDER
Plaintiffs' consolidated motions to apply Texas law to issues of punitive damages are GRANTED.
Motion of defendants Continental Airlines and Texas Air to apply Colorado law to issues of punitive damages is DENIED.
Motion of certain plaintiffs to apply Idaho law to issues of punitive damages is DENIED.
Defendants' motion to dismiss punitive damage claims brought in Idaho pending hearing is DENIED AS MOOT.
Defendants' motion to extend time to file motion for summary judgment on punitive damage claims, filed November 7, 1988, is GRANTED IN PART. Defendants are DIRECTED to file their motion motion for summary judgment on issues of punitive damages on or before November 24, 1988. Plaintiffs are DIRECTED to file responses to defendants' motion for summary judgment on or before December 1, 1988. This case is set for trial beginning December 12, 1988.
NOTES
[1] Plaintiffs also allege that Continental's 1987 national advertising campaign constitutes a deceptive trade practice. The applicability of the Texas Deceptive Trade Practices-Consumer Protection Act to the conduct and injuries involved in this litigation is also at issue.
[2] New Jersey courts acknowledge that the results produced by either test are usually the same. See Veazey v. Doremus, 103 N.J. 244, 510 A.2d 1187 (1986); see also In re Air Crash Disaster Near Chicago, Illinois, 644 F.2d 594, 604 (7th Cir.). cert. denied sub nom., 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981). Other courts performing choice of law analysis in air crash cases have also consolidated their opinions under the Restatement's "most significant relationship" test. See, e.g., Emmart v. Piper Aircraft Corp., 659 F.Supp. 843 (S.D.Fla.1987); see also W. Turley, Aviation Litigation § 11.03 (1986 and Supp.1987); S. Speiser & C. Krause, Aviation Tort Law § 2:5 (1978 and Supp.1987). The approach was applied in briefs submitted by defendants and the Plaintiffs Steering Committee. Neither New Jersey plaintiff represented by the Plaintiffs Steering Committee has objected to this approach.
[3] Choice of law issues in this litigation will be resolved through the principle of decepage. By decepage we mean the search for the rule of law most appropriately applied within the context of a particular issue. See Reese, Decepage: A Common Phenomenon In Choice of Law, 73 Colum.L.Rev. 58, 58-59 (1973). Although decepage may lead to the application of the law of different jurisdictions to different issues within the same case, the approach is widely applied to the multifaceted issues involved in aviation litigation. See, e.g., Sabell v. Pacific Intermountain Express, 36 Colo.App. 60, 536 P.2d 1160, 1165-66 (1975); Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190, 1193 n. 1 (1985); Chicago, 644 F.2d at 611. The Restatement test itself advises that the contacts of a state with certain litigation "are to be evaluated according to their relative importance with respect to the particular issue." Rest. (Second) Conflicts of Law § 145.
[4] For Idaho law, see Soria v. Sierra Pacific Airlines, Inc., 111 Idaho 594, 726 P.2d 706 (1986); Cheney v. Palos Verdes Investment Corp., 104 Idaho 897, 665 P.2d 661 (1983); Volk v. Baldazo, 103 Idaho 570, 651 P.2d 11 (Idaho 1982); Idaho Code § 6-1604. For Texas law, see Lunsford v. Morris, 746 S.W.2d 471 (Tex.1988); Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908 (Tex.1981); Burk Realty Co. v. Wall, 616 S.W.2d 911 (Tex.1981); Tex. Const. art. 16 § 26; Tex.Civ.Prac. and Rem. Code § 71.009.
[5] For Colorado law, see Mortgage Finance, Inc. v. Podleski, 742 P.2d 900 (Colo.1987); Tri-Aspen Construction Co. v. Johnson, 714 P.2d 484 (Colo. 1986); Herbertson v. Russel, 150 Colo. 110, 371 P.2d 422 (1962); Murphy v. Colorado Aviation, Inc., 41 Colo.App. 237, 588 P.2d 877 (1978); Kinnett v. Sky's West Parachute Center, 596 F.Supp. 1039 (D.Colo.1984); Colo.Rev.Stat. §§ 13-21-102 & 203.
[6] The Restatement (Second) of Conflict of Laws, § 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
[7] The parties view the configuration of contacts as determinative due to their efforts to divine absolute "rules" from other air crash cases. While we realize the importance of certainty and predictability to choice of law issues, neither the Restatement (Second) of Conflicts nor previous cases provide clear rules of applicable law. The significance of a state's relationship to a particular accident or certain parties depends on the circumstances of each case. Rest. (Second) of Conflict of Laws §§ 147, 146 and 175 (provisions on tort, personal injury and wrongful death). Cases arriving at different outcomes frequently arise out of similarly configured contact states. Thus, case law serves as a source for analogy rather than absolute rules.
[8] Alley v. Gubser Development Co., 785 F.2d 849, 855 (10th Cir.), cert. denied, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986) and Malandris v. Merrill, Lynch, Pierce, Fenner & Smith, 703 F.2d 1152, 1174-75 & nn. 17-18 (10th Cir.1981), cert. denied, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983) (Colorado law); Martin v. Texaco, 726 F.2d 207, 213 (5th Cir.1984) and Fort Worth Cab & Baggage Co., 735 S.W.2d 303, 306 (Tex.App.1987) (Texas law); Soria v. Sierra Pacific Airlines, Inc., 111 Idaho 594, 726 P.2d 706, 722-23 (1986) (Idaho law).
[9] See Dresser Indus., Inc. v. Sandvick, 732 F.2d 783, 786 (10th Cir.1984); Vandeventer v. Four Corners Electric Co., 663 F.2d 1016, 1018 (10th Cir.1981); Emmart v. Piper Aircraft Corp., 659 F.Supp. 843, 845 (S.D.Fla.1987); Freeman v. World Airways, 596 F.Supp. 841, 848 (S.D.Fla. 1984); Sibley v. KLM-Royal Dutch Airlines, 454 F.Supp. 425, 428 (S.D.N.Y.1978); Murphy v. Colorado Aviation Inc., 41 Colo.App. 237, 588 P.2d 877, 880 (1978); Rest. (Second) Conflict of Laws §§ 145, comment c, 146 comment d; Reese, The Law Governing Airplane Accidents, 39 Wash. & Lee L.Rev. 1303, 1317 (1982).
[10] Defendants state that acceptance of plaintiffs' characterization of the case would amount to summary judgment on issues of causation. We reject defendants' argument. Acceptance of defendants' characterization of the case would itself amount to a dismissal of plaintiffs claims that corporate principles acting in Texas directly caused the accident. Neither approach is appropriate at this juncture. We need only make limited findings to serve the purpose of this order.
[11] Our order establishing the trial plan for this consolidation is covered elsewhere.
[12] We reject Continental's assertion that its hubs are additional principal places of business. Courts applying choice of law rules to multifaceted corporations emphasize that focusing on satellite operations as "principal" would encourage companies to separate decision makers from operators thus taking advantage of favorable punitive damage statutes in a matter tantamount to forum shopping. See, e.g., Chicago, 644 F.2d at 613-14. (corporate nerve center distinct from defendants' manufacturing and repair facilities).
[13] The Restatement lists six factors to be considered in weighing contacts in choice of law disputes: (1) needs of the interstate and international systems; (2) relevant policies of the forum; (3) relevant policies of other interested states and the relative interests of the states in the determination of the particular issue; (4) protection of justified expectations; (5) certainty, predictability and uniformity of result; and (6) ease of determination and application of the law. Rest. (Second) of Conflict of Laws § 6. The relative importance of each factor varies depending on whether the action sounds in tort or contract. Comments to § 145 direct our attention to the main features we discuss above.
[14] The use of the word "fortuitous" in air crash cases stands for the proposition that an air crash could occur in any state over which a particular aircraft was scheduled to fly. See, e.g., Chicago, 644 F.2d at 615 ("That the injury in our case occurred in Illinois can only be described as fortuitous. Had the DC-10's engine fallen off later, the injury might have occurred in any number of states.").
[15] We note that in each of these cases the courts found the burden of the crash on local emergency resources to be significant. We do not see this feature as distinguishing a take-off accident from other accidents. In every fortuitous plane crash, emergency resources are taxed in the locality where the plane lands. Only in the Washington, D.C., crash, which destroyed a bridge and disrupted commuter traffic in the region for several weeks, was the impact of the crash at all distinctive from the burdens imposed on any state in which a commercial jet crashes. Washington, D.C., 559 F.Supp. at 350 & n. 26.
[16] In providing that one-third of all punitive damage judgments awarded in Colorado should be disbursed to the state's general fund, the Colorado legislature specifically stated that the provision should bear no significance in determining the interests of Colorado in a punitive damage award. Colo.Rev.Stat. § 13-21-102(4).
[17] See discussion of state laws, supra.
[18] Effectively, under Colorado law the actual damages verdict establishes a range for punitive damage awards in that case. A punitive damage award must bear a relationship to a defendant's culpability as shown by the evidence. Accordingly, in these consolidated cases, the liability phase jury could only determine the amount of punitive damages to be awarded once the range has been established in the transferred compensatory damage trials. Because several plaintiffs have alleged injuries which are not likely to run their course for several months, the exact amount of actual damages suffered from this air crash will not be determinable at trial or in the immediate future.
[19] We note further for the purposes of comity, that our hearing on punitive damages choice of law motions served the spirit of that statute. Plaintiffs have presented theories of punitive damages sufficient to withstand a motion to dismiss and accordingly would be granted leave to amend their complaints pursuant to Rule 15 of the Federal Rules of Civil Procedure.
[20] Other courts and several scholars have also suggested that federal action is necessary. See Washington, D.C., 559 F.Supp. at 335; Chicago, 644 F.2d at 632-33; Chicago, 500 F.Supp. at 1054 (Judges Robson and Will); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400, 403-05 (7th Cir.1974), cert. denied sub nom., 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975); see also Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314, 1329-41 (5th Cir.1985) (en banc) (Clark, J., dissenting), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); In re "Agent Orange" Products Liab. Litig., 506 F.Supp. 737 (E.D.N.Y.1979), rev'd, 635 F.2d 987 (2d Cir. 1980), cert. denied sub nom., 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).
[21] See In re Paris Air Crash of March 3, 1974, 399 F.Supp. 732, 739 (C.D.Cal.1975) (discussing the frustration of an "informed guess" as opposed to the more appropriate derivation of a "rule of action"); Kennelly, Litigation Implications of the Chicago O'Hare Airport Crash of American Airlines Flight 191, 15 J.Mar.L.Rev. 273, 297-300 (1982); Atwood, The Choice of Law in Mass Tort Litig., 19 Conn.L.Rev. 9, 28 (1986); Note, Conflict of Laws, 47 J. Air L. & Comm. 339, 359-60 (1982; Leflar, Choice of Law: A Well Watered Matter, 41 L. & Contemp. Probs. 10, 24-25 (1977); Note, The Case for Federal Common Law on Aircraft Disaster Litigation, 51 N.Y.U.L.Rev. 232 (1976).