In the Matter of COLORADO SPRINGS AIR CRASH, Consolidated Pretrial Proceeding.

No. 93–C–5959.

United States District Court,
N.D. Illinois,
Eastern Division.

July 21, 1994.

---

James Michael Kuhn, U.S. Attorney's Office, Chicago, IL.

Charles A. Hornewer, Hinshaw & Culbertson, Chicago, IL.

Michael Rowe Feagley, Lucia Nale, Mayer, Brown & Platt, Chicago, IL.

Mary Jo Smerz, Lowrey & Smerz, Ltd., Chicago, IL.

Kevin P. Durkin, Corboy, Demetrio & Clifford, P.C., Chicago, IL.

Stephen P. Kenney, Lord, Bissell & Brook, Chicago, IL.

John W. Adler, Adler, Kaplan & Begy, Chicago, IL.

Donald J. Nolan, Law Offices of Donald J. Nolan, Chicago, IL.

Keith Gerrard, Thomas J. McLaughlin, Perkins Coie, Seattle, WA.

Richard F. Schaden, Schaden, Lampert & Lampert, Broomfield, CO.

Andrew Dilk, F.A.A., Washington, DC.

Colleen L. Conlin, U.S. Dept. of Justice; Torts Branch, Civ. Div., Washington, DC.

Brian Murphy, Hofeld & Schaffner, Chicago, IL.

Gregory D. Hanley, Brooks, Cahill & Hanley, Chicago, IL.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Before this court are briefs discussing the choice-of-law issues implicated by the United States' Motion for a Determination of Good Faith Settlement. The government's deceptively innocuous motion raises the complex issue of whether the government's settlement with the plaintiffs is subject to good faith review under Illinois law, Colorado law, or the law of some other state. Choice of law determinations in mass tort cases are always tedious. Our burden is increased unnecessarily when—as in this case—the parties fail to address directly the conflict fueling the controversy and fail to candidly discuss the substantive law of the relevant states.

The parties focused their briefs on the law of contribution, *ie.* which state's law should apply the defendants' contribution claims against the government. A review of Washington, Illinois and Colorado's contribution statutes shows that there is no real conflict pertaining to contribution; all three states' statutes protect settling defendants from contribution actions, if the settlement was made in good faith.[1] 740 ILCS 100/2; RCWA 4.22.060; C.R.S. 13–50.5–105. If contribution were the real matter at issue, there would be no true conflict, and we could proceed with our determination of whether the government's settlements with the plaintiffs were in good faith.

However, the settlement agreements also raise the issue of whether the remaining defendants' share of liability will be reduced by the government's proportionate share of liability, or by the actual amount paid in settlement. On this issue, there is a true conflict between the substantive law of the three states with an interest in this litigation.

■ Colorado limits the damages paid by a defendant to the defendant's proportionate share of the total liability. C.R.S. 13–21–111.5(1). Any award received by a plaintiff must be reduced by the *proportionate* share of that award attributable to settling defendants. C.R.S. 13–50.5–105(1)(a).

---

1. Washington's statute requires a "reasonable" settlement rather than a "good faith" settlement. Our review of Washington case law shows that there is no substantive difference between Washington's "reasonable" standard and Illinois' "good faith" standard. *Glover for Cobb v. Tacoma General Hospital,* [98 Wash.2d 708] 658 P.2d 1230, 1235 (Wash.1983) (no one factor should control determination of whether settlement was reasonable); *Ruffino v. Hinze,* 181 Ill.App.3d 827, 831 [130 Ill.Dec. 542, 537 N.E.2d 871] (1st Dist.1989) (Illinois courts have refused to empha-size any one factor in determining whether "settlement in a fair and *reasonable* amount has been reached.") (emphasis added). Also, Washington law requires a "hearing" on the reasonableness of the settlement. The Washington Supreme Court deliberately left the question of what constitutes a "hearing" to the discretion of trial courts. *Glover,* 658 P.2d at 1236, f.n. 3. We believe that the Illinois procedures for determining whether the settlement is in good faith satisfies Washington's statutory requirements.

■ Illinois holds joint tortfeasors jointly and severally liable, unless a tortfeasor is less than 25% responsible for the plaintiff's injuries. 735 ILCS 5/2–1117. Illinois law reduces a co-defendant's liability by the *actual* amount of any settlement the plaintiff has reached with another defendant. 740 ILCS 100/2; *Tragarz v. Keene Corp.*, 980 F.2d 411, 431 (7th Cir.1992); *Henry by Henry v. St. John's Hosp.*, 138 Ill.2d 533, 541, 150 Ill.Dec. 523, 563 N.E.2d 410 (1990), *cert. den.* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991).

■ Contrary to Boeing's representation, Washington's law is similar to that of Illinois. In Washington, a defendant is generally only severally liable for its joint torts. When, as here, the claimant is in no way responsible for his own injuries, Washington holds tortfeasors jointly and severally liable. RCWA 4.22.070(1)(b); *Washburn v. Beatt Equipment Co.*, 120 Wash.2d 246, 840 P.2d 860, 886 (1992). Boeing shamefully failed to include in its discussion this exception to Washington's general rule, despite the exception's direct applicability to the facts in this case.[2] Rather than discuss Washington's statute, the plaintiff's gave an accurate litigant the defendants' procedural misdeeds. While we understand and share the plaintiffs' frustrations, we cannot excuse their failure to notice a significant statute.

Finally, as in Illinois, the plaintiff's award will be reduced by the *actual* amount paid by a settling defendant, not the settling defendant's proportionate share of fault. RCWA 4.22.060(2).

The Washington statute also differs from the Illinois statute in that Washington law applies joint and several liability only to tortfeasors against whom *judgment* has been entered; Illinois has no such restriction. Thus, there appears to be a conflict between the laws of these two states. A rational plaintiff in Washington, however, will agree not to enforce a judgment against a settling joint tortfeasor. This puts a rational plaintiff in Washington in the same position as a plaintiff in Illinois who releases a settling defendant from liability. In the end, the effect of settlement on the remaining defendants is the same under either state's regime: the non-settling defendant's liability to the plaintiff will be reduced by the *actual* amount paid in settlement. *Washburn*, 840 P.2d at 887; *Berard v. Eagle Air Helicopter Inc.*, 257 Ill.App.3d 778, 780, 195 Ill.Dec. 913, 915, 629 N.E.2d 221, 223 (1994). There is no true conflict between the law of Illinois and the law of Washington, as they apply in this case.

### Which State's Law Applies

■ Since the issue of joint and several liability is not related to the claims arising from the Federal Tort Claims Act, that statute's choice of law provision is of no interest here.[3] The effect of the government's settlement on the remaining defendants is based on plaintiffs claims against those defendants. *See* Boeing's Brief at p. 11. Since this court has supplemental jurisdiction over those claims, we will apply the choice of law rules of the forum state, Illinois. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.*, 843 F.Supp. 759, 772 (D.Me. 1994). As a practical matter, we found no significant difference in the choice-of-law rules of Colorado and Illinois. Both employ the Restatement (Second) approach. Indeed, Colorado choice-of-law cases cite to Illinois authority. *See e.g. In re Air Crash Disaster at Stapelton Intern. Airport Denver Colo. on Nov. 15, 1987*, 720 F.Supp. 1445 (D.Colo. 1988).

### Illinois' Choice of Law

■ Illinois has adopted the Restatement (Second) Choice of Law as its method of

---

**2.** While the statute actually requires a determination by a trier of fact that the plaintiff was in no way responsible for his own injuries, we find it inconceivable, and Boeing has not argued, that the decedents were in anyway contributorily negligent. The plaintiffs here therefore satisfy RCWA 4.22.070(1)(b).

**3.** We also note that the government could have moved to dismiss the claims against it for substantive reasons and removed itself from this case on a Rule 12 motion. In other words, this court's jurisdiction under the Federal Torts Claims Act is tenuous at best.

resolving conflicts of law issues. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Under the Restatement approach, we must apply the law of the state with the most significant relationship to the particular matter at issue. *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 611 (7th Cir.1981), *cert. den.,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981).

■ The "most significant relationship" is measured by two sets of criteria. The first consists of the following general factors, listed in order of importance:

(a) the needs of the interstate system;

(b) relevant policies of the forum;

(c) relevant policies of other interested states;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity in result; and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6; *In re Air Crash,* 644 F.2d at 611–612. We must consider these principles in light of the following relevant contacts: (1) the place of the injury; (2) the place of the misconduct; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflict of Laws § 145; *In re Air Crash,* 644 F.2d at 612.

The Seventh Circuit has also adopted the principle of depeçage for choice-of-law questions. Depeçage is the "process of applying the rules of different states on the basis of the precise issue involved." *Id. See also, International Administrators, Inc. v. Life Ins. Co. of North America,* 753 F.2d 1373, 1376, f.n. 4 (7th Cir.1985) ("The choice of law is not made for all issues; the trend is to decide the applicable law for each issue separately.") This principal is particularly useful in personal injury cases, like the instant one, where there are many theories of liability and where there are multiple parties from different states. The "precise issue in-

volved" here is how the government's settlement effects the liability of the non-settling defendants and the sole question we must address, then, is which state's law concerning joint and several liability applies in this case.

### Relevant Contacts

■ The majority of the decedents lived in Colorado. Most of the plaintiffs are residents of Colorado. Colorado is also the place of injury. *See* Boeing's Brief at p. 1. Defendant Boeing has its principal place of business in Washington and Washington is the place of Boeing's misconduct. *See* Boeing's Brief at p. 12. Defendant United has its principal place of business in Illinois. *See* Exhibit A to Plaintiff's Brief. United's misconduct occurred either in Illinois (where the flight began and where United has its principal maintenance facility) or Colorado (where the plane was negligently operated). *Id.,* Boeing's Brief at p. 1. The relationship between United and the decedents is focused in Colorado, since the decedents boarded and were scheduled to deplane in Colorado. *See* Boeing's Brief at p. 6, f.n. 1; *Stapleton,* 720 F.Supp. at 1451, *citing, Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190, 1195 (1985). Since the decedents boarded a Boeing plane in Colorado and planned to travel within the state on the Boeing plane, we find that Colorado is also the focus of the relationship between the plaintiffs and Boeing.

Thus, Colorado, Illinois and Washington all have some contact with either the parties or the claims at issue. The only relevant contacts, however, are those which pertain to the particular issue of whether the defendants should be subject to joint and several liability.

■ The application of joint and several liability serves two general purposes. First, it acts as a deterrent by making a defendant liable for all of the consequences of its negligence, even if the defendant's negligence was not the only cause of the injury. Prosser, *Law of Torts,* Ch. 8, § 47, pp. 297–98 (1971). Second, it encourages settlement when, as in this case, settling defendants are protected by statute from an action for contribution. The remaining defendants are encouraged to

settle their claims with the plaintiff, in order to avoid facing a large damage award which is only mitigated by the *actual* amount of the plaintiff's settlements with the other tortfeasors.

### A. Relevant Contacts for Deterrence.

 We find that the principal place of business is the most significant contact for the question of whether applying joint and several liability will deter negligent behavior. States have a significant interest in controlling the behavior of companies domiciled within their borders. Colorado itself has found that a corporation's principle place of business is more relevant to deterring negligence than the site of the injury, even when the injury occurred in Colorado:

> While Colorado has an interest in regulating the conduct of corporations entering its jurisdiction to do business, it (sic) *interest in air safety is somewhat lessened when a foreign corporation attempts to shield itself from the more onerous laws of its home state by seeking refuge under Colorado law.*

*Stapleton,* 720 F.Supp. at 1453 (emphasis added) (citations omitted). Holding a defendant corporation accountable to its principal place of business "serves choice of law interests in certainty, predictability and expectation." *Id.* The Seventh Circuit also recognized the importance of applying the law of a corporate defendant's principal place of business, when, as here, the defendant corporations do business in many states.

> If courts held that the place of 'conduct' had the critical interest in punitive damages and that the place of corporate headquarters had no interest in punitive damages, then litigation would center around exactly where activities and decisions occurred. The practical effect of such a holding would be to require extensive examinations of numerous employees and to require complex investigations into the precise locations of many areas of corporate decision. Corporations seeking to avoid potential punitive damages would be encouraged to structure decisions so that no specific locus for a major decision would

ever be proved to have occurred in a 'punitive' state.

*In re Air Crash,* 644 F.2d at 613–14. Although the Seventh Circuit was discussing punitive damages, we believe the instant case is analogous because, like punitive damages, joint and several liability serves as a deterrent to corporate defendants.

None of the other contacts listed in § 145 are relevant to the particular matter at issue. The situs of the injury is generally fortuitous in air crash cases. *In re Air Crash,* 644 F.2d at 612. Although there was a flight segment which took place entirely within the state of Colorado, the alleged negligence of Boeing and United could have resulted in an accident anywhere along the plane's interstate flight.

Also, the site of the misconduct, while it may be important for deterrence in general, is less relevant for that purpose where defendants operate in many states. In any event, the places of the misconduct of Boeing and United are also the locations of their principle places of business; the location of misconduct merely supports applying the law of the principal place of business in this case.

The remaining contacts discussed by the Restatement are with Colorado, but we do not find them particularly relevant to our issue. The decedents resided in Colorado, but Colorado's statute on joint and several liability does not protect the interests of the plaintiffs. Colorado is also the focus of the parties' relationship, but we find that this contact is outweighed by the interests of Washington and Illinois.

Here, then, applying Illinois law to Boeing and United furthers certainty, predictability and uniformity in result. Also, neither party can object that it could have "expected" a different result, since each voluntarily chose as its principal place of business a forum in which it would be subject to joint and several liability. Finally, since joint and several liability is the traditional method of apportioning liability among joint tortfeasors, it will be "easier" for this court to determine and apply joint and several liability to this case. Since there is no real conflict, we will apply the law of the forum. *International Administrators,* 753 F.2d at 1376, f.n. 4.

### B. Encouraging Settlement.

We must also consider the four § 145 contacts in light of the "relevant policies of the forum." Restatement (Second) of Conflict of Laws § 6. Here, Illinois has an express interest in encouraging settlement of cases pending in its court systems.[4] This purpose would be frustrated by the application of a proportionate share settlement bar rule.

One purpose behind the Illinois Contribution Act is to encourage settlement. *Ziarko v. Soo Line Railroad,* 161 Ill.2d 267, 204 Ill.Dec. 178, 641 N.E.2d 402 (1994). Indeed, encouraging settlement is an express interest of Illinois courts and of the Illinois statute. *Ripplinger v. Quigley,* 231 Ill.App.3d 1002, 1009, 173 Ill.Dec. 552, 597 N.E.2d 260 (1992) (holding that common law rule which did not allow plaintiff to re-file voluntarily dismissed complaint after defendant failed to perform settlement agreement would discourage settlement and rule therefore invalid).

We believe that joint and several liability (when coupled with immunity from contribution actions for settling defendants) encourages settlement of disputes. *See generally,* Easterbrook, Landes & Posner, "Contribution Among Antitrust Defendants," 23 J.Law & Econ. 331, 362–364. Under a regime like that of Colorado, there is no incentive for defendants to settle cases, because the defendants will only *ever* be liable for their *pro rata* share of liability (plus the litigation costs). Under the Illinois system, once one defendant settles, there is a marked increase in the pressure on the other defendants to settle, in order to avoid liability for the bulk of a damage award.

Finally, no other state has any significant interest in encouraging the settlement of this case or in the distribution of post-verdict liability. "In general, it is fitting that the state whose interests are most deeply affected should have its local law apply." Restatement, of Conflict of Laws § 6 at p. 14. *See also First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029, 1033 (S.D.N.Y.1986) (the

law of the forum should apply to question of whether non-settling defendants' liability is reduced by the settling defendant's proportionate share of liability or the actual amount).

"[T]he [Illinois Contribution] Act clearly evidences a legislative intent to encourage settlements in tort litigation and promote judicial economy." *Nguyen v. Tilwalli,* 144 Ill.App.3d 968, 972, 99 Ill.Dec. 183, 495 N.E.2d 630 (1986). This is a significant policy of the forum which, when coupled with the other significant contacts Illinois has with this case, compels the application of Illinois' contribution statute in this case.

### *Conclusion*

The government's motion for a good faith finding under Illinois law raised the question of whether the non-settling defendants would be allowed the benefit of Colorado's proportionate fault regime. Because Colorado's contacts with the particular issue of how to apportion post-verdict liability are of minimal significance, we will not apply Colorado's contribution act in this case. Because there is no true conflict between the law of Washington and the law of Illinois on this particular issue and because Illinois has an express interest in encouraging settlements which would be furthered by applying its own law in this case, we will apply the Illinois Contribution Act to the government's settlement with the plaintiffs and hold the defendants jointly and severally liable for the consequences of their negligence.

The parties are instructed to submit briefs, with exhibits, on the issue of whether the government's settlement with the plaintiffs was in good faith, in accordance with the Illinois Contribution Act and cases promulgated thereunder. 740 ILCS 100/1 *et seq.*

---

4. In addition to the fact that we are a federal court sitting in Illinois, there is a serious question of whether this case will be remanded to Illinois state court, if we find the settlements were made in good faith.