J. Hunter CHILES, III,
et al., Plaintiffs,

v.

NOVARTIS PHARMACEUTICALS
CORP., Defendant.

Case No. 3:06–cv–96–J–25 JBT.

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 7, 2013.

Bart T. Valad, John J. Vecchione, Valad & Vecchione, PLLC, Fairfax, VA, John J. Beins, Beins, Goldberg & Hennessey, LLP, Chevy Chase, MD, Myers Carroll Cayer, Carroll Cayer, Jacksonville, FL, Ramon A. Rasco, Podhurst Orseck, PA, Miami, FL, for Plaintiffs.

Donald W. Fowler, Jared S. Wiesner, John M. Kalas, Katharine R. Latimer, Kirby T. Griffis, Martin C. Calhoun, Hollingsworth, LLP, Washington, DC, Michael J. Thomas, William H. Hughes, III, Penning-

ton, Moore, Wilkinson, Bell & Dunbar, PA, Tallahassee, FL, for Defendant.

### ORDER

HENRY LEE ADAMS, JR., District Judge.

This Cause is before the Court on Defendant's Motion To Apply New Jersey Law To Plaintiffs' Punitive Damages Demand (Dkt. 83) and its Motion to Exclude Plaintiffs' Expert Suzanne Parisian (Dkt. 117).

### Standard

*Expert Witness Testimony*

The presentation of scientific and technical knowledge or opinion testimony by a "witness qualified as an expert" is permitted under Rule 702 of the Federal Rules of Evidence where such testimony:

(1) is based upon sufficient facts or data;

(2) is the product of reliable principles and methods;

(3) results from the reliable application of "principles and methods ... to the facts of the case; and

(4) will assist the trier of fact to understand the evidence or to determine a fact in issue.

Fed.R.Evid. 702.

 The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* addressed the admissibility of evidence under Rule 702 and established that trial judges are to act as gatekeepers to "ensure that any and all scientific testimony ... is not only relevant but reliable." *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert,* 509 U.S. 579, 588, 113 S.Ct. 2786 (1993)). The trial judge must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786.

 The Eleventh Circuit has established a three part inquiry for district courts to follow in performing their gatekeeper role. For evidence to be admissible under Rule 702, the district court must find by a preponderance of the evidence that:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert,* and

(3) the testimony [will] assist[ ] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.,* 609 F.3d 1183, 1194 (11th Cir.2010).

### Analysis

*Punitive Damages*

The Parties agree that Florida law applies to the issues of liability and compensatory damages. However, Defendant argues that New Jersey law should apply to the issue of punitive damages because the relevant conduct occurred at Defendant's corporate headquarters in New Jersey.[1] Plaintiff argues that because he resided in Florida and was treated here during the

---

1. New Jersey's statute precludes punitive damages in products liability lawsuits involving FDA approved drugs except in cases where the pharmaceutical company "knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question," N.J. Stat. Ann. § 2A:58C–5(c).

relevant time period, his injuries occurred in the state.

Because New Jersey and Florida's punitive damage laws differ regarding the issue that must be resolved in the instant case, the Court must undertake a conflict of laws analysis. *Allstate Ins. Co. v. Cohessy,* 32 F.Supp.2d 1328, 1330 (M.D.Fla. 1998) (*citing Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Further, because this case is before the Court on diversity jurisdiction, the Court utilizes Florida's conflict of law principles in determining which state's law applies.

In *Bishop v. Fla. Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980), Florida adopted the adopt the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws, Sections 145–6, to resolve choice of law issues arising from tort claims:

Section 145—The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Section 6.

(2) Contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 146—Personal Injuries

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in s 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id.* at 1001.

The *Bishop* court noted the factors a Court must examine: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied.

*Id.* at fn. 1 (*citing Restatement (Second) of Conflicts* § 6 (1971)).

These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

As noted, Plaintiff emphasizes that during the relevant time period, he was a Florida resident who was treated with the relevant drug in Florida by Florida physicians. Further, while Novartis' headquarters are in New Jersey, Plaintiff points out that Novartis is incorporated in Delaware and Delaware does not restrict punitive damages in cases such as these.

■ Defendant contends that the fact that the injury occurred in Florida is unimportant because Plaintiffs presence in the state was fortuitous; it marketed Zometa® nationwide. Regarding Delaware, Defendant argues that New Jersey

has the greater interest in this case because a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place. Most importantly, Plaintiffs have failed to rebut Defendant's argument that the decisions at issue that potentially give rise to punitive damages were made from Defendant's New Jersey headquarters.

Defendant is correct that New Jersey has a more significant relationship to the issue of punitive damages than Plaintiff's home state in light of Novartis' contacts with New Jersey and the Restatement's § 6 principles. (*Zimmerman v. Novartis Pharmaceuticals Corp.*, 889 F.Supp.2d 757, 762–63 (D.Md.2012)(examining significant relationship factors)).

Because the relevant conduct at issue took place primarily in New Jersey, that state's law on punitive damages is applicable under the Florida choice of law analysis. Thus, Defendant's motion to apply New Jersey law to the issue of punitive damages is granted.

*Dr. Parisian*

As a threshold issue, Plaintiff states in his opposition that he does not intend to offer any testimony from Dr. Parisian about medical causation, corporate state of mind, industry standards, monitoring of the clinical trials and "ghostwriting." Therefore, Defendant's objections regarding these issues are moot. Further, the Court obviously will not allow Dr. Parisian to offer legal conclusions such as an opinion that Defendant violated the FDA regulations.

As other Zometa® courts have found, Dr. Parisian generally meets the *Daubert* standard regarding her qualifications to testify on some of the relevant matters in this case. *Lemons v. Novartis Pharmaceuticals Corp.*, 849 F.Supp.2d 608, 613

(W.D.N.C.2012) ("Almost every Court that considered Dr. Parisian's testimony in an Aredia® and Zometa® case has found some portion of her testimony to be relevant and reliable and thus found her qualified to testify as a general matter under *Daubert*.")

Regarding the issue of whether Defendant's labels included adequate warnings to oncologists, Defendant argues that because Dr. Parisian is not an expert on Zometa® or an oncologist who prescribes it, she is not qualified to analyze its risks and benefits. Defendant also notes that Dr. Parisian has not drafted any proposed alternative labeling for the drug. However, as noted by Plaintiff, Defendant fails to cite any Zometa® cases where Dr. Parisian was excluded from testifying on the labeling issue. As stated by the *Lemons* court, "Certainly, where labeling of a pharmaceutical product is at issue, Dr. Parisian's testimony will assist the trier of fact in understanding the complexity of the FDA's regulatory scheme and the role of a pharmaceutical drug sponsor in complying with that regulatory scheme." 849 F.Supp.2d 608, 614 (W.D.N.C.2012). The Court agrees with the reasoning in the *Lemons* decision.

As to Defendant's one paragraph argument that the Court should exclude "additional irrelevant, unfairly prejudicial and confusing testimony," the Court agrees with Plaintiff that this blanket argument is vague and premature.

Thus, the remaining issue is whether Dr. Parisian is qualified to testify about the "reasonable evidence of an association of a serious hazard with a drug pursuant to 21 C.F.R. § 210.57." Plaintiff maintains that the *Zimmerman* and *Brown* courts have allowed this testimony. Regardless, Plaintiff's reference is unclear. To the extent that the Court can speculate as to the meaning of this contention, it appears the

issue is whether Dr. Parisian should be permitted to testify regarding "regulatory causation." This issue has not been adequately briefed by the Parties and will be decided at trial if necessary. As noted, Dr. Parisian will not be permitted to testify regarding medical causation.[2] Accordingly, it is **ORDERED:**

1. Defendant's Motion To Apply New Jersey Law To Plaintiffs' Punitive Damages Demand (Dkt. 83) is **GRANTED;**

2. Motion to Exclude Plaintiffs' Expert Suzanne Parisian (Dkt. 117) is **DENIED without prejudice.**

**2.** Defendant also argues that this particular testimony should be precluded because it is not in Dr. Parisian's report. However, Plaintiff counters that there is no prejudice because this litigation has been proceeding for several years, Dr. Parisian has been deposed multiple times and also her testimony has been elicited at several *Daubert* hearings and trials. Given the procedural posture of this case, the Court agrees that prejudice is not at issue.