**William KRAUSE, individually and as personal representative of Pamela Krause, deceased, Plaintiff,**

v.

**NOVARTIS PHARMACEUTICALS CORPORATIONS, Defendant.**

**Case No. 1:06cv12–SPM/GRJ.**

United States District Court,
N.D. Florida,
Gainesville Division.

Feb. 28, 2013.

Jack Joshua Fine, Fine Farkash & Parlapiano, Gainesville, FL, Robert Geoffrey

Germany, Pittman Germany Roberts & Welsh, Jackson, MS, for Plaintiff.

Andrea Roberts Pierson, Christine R.M. Kain, James A. O'Neal, Faegre Baker Daniels LLP, Minneapolis, MN, Buffy J. Mims, Heather A. Pigman, Hollingsworth LLP, Washington, DC, Michael John Thomas, William H. Hughes, III, Pennington Moore Wilkinson Etc., Tallahassee, FL, for Defendant.

### *ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT*

M. CASEY RODGERS, Chief Judge.

This cause is before the court on Defendant Novartis Pharmaceuticals Corporation's Motion for Partial Summary Judgment to Apply New Jersey Punitive Damages Law with Supporting Memorandum of Law. (Doc. 36). Plaintiff William Krause filed a response in opposition to this motion. (Doc. 40). Defendant also filed supplements to this motion in which the defendant cited relevant legal authority in other districts. (Docs. 57, 79, 101).

**Background**

This diversity action commenced in January 2006. The case was transferred to the Middle District of Tennessee in July 2006 as a part of a multidistrict litigation action. Thereafter, in April of 2011, the case was remanded to this court.

Pamela Krause was diagnosed with breast cancer that spread to her bone. Her doctor prescribed a course of monthly Aredia® therapy, and later switched to therapy with Zometa®. These drugs are manufactured, sold, and distributed by the defendant. Plaintiff believes that these drugs caused Pamela Krause to develop osteonecrosis of the jaw and to endure an opening in the roof of her mouth that extended into her sinus.

Among other damages, the plaintiff is seeking punitive damages for the alleged gross negligence of the defendant. (Doc. 1, ¶ 16). Plaintiff argues that the defendant failed to adequately warn dentists and other health care providers of the dangers of Aredia® and Zometa® or advise them on how to monitor and treat patients who take Aredia® and Zometa® as prescribed. *Id.* The plaintiff seeks to punish the defendant and deter other drug companies from the same wrongdoing. *Id.*

The defendant has moved for partial summary judgment on the question of which state's law governs the issue of punitive damages in this case. While there is no dispute that Florida law governs the issue of compensatory damages, the defendant argues that New Jersey law, not Florida law, should be applied in determining the issue of punitive damages. A conflict exists because punitive damages are determined differently in these respective states. Applying New Jersey law, the defendant contends that punitive damages are not available unless the plaintiff proves the pharmaceutical company committed fraud on the United States Food and Drug Administration ("FDA") that was material and relevant to the harm at issue in this lawsuit; whereas the plaintiff contends that under Florida law, punitive damages are potentially available in this case. Furthermore, the two states have different statutory caps on punitive damages. New Jersey limits punitive damages at the greater of $350,000 or five times the compensatory damages award; whereas Florida limits punitive damages at the greater of $500,000 or five times the compensatory damage award.

**Legal Standards**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any

material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only a question of law is at issue.

■ In diversity suits where a conflict exists between the law of different states as to a particular issue, the court must determine which state's law applies to the issue. *See Tiller v. Ford Motor Co.,* Case No. 3:03cv489–J–32–HTS, 2006 WL 166530, *2 (M.D.Fla. January 21, 2006) (considering the choice of law analysis with regard to the issue of punitive damages, and citing *Mezroub v. Capella,* 702 So.2d 562, 565 (Fla. 2d DCA 1997)); *see also Judge v. Am. Motors Corp.,* 908 F.2d 1565, 1578 (11th Cir.1990) ("Florida courts apply the 'most significant relationship' test, not to a collective sum of issues in dispute, but to each individual issue which arises in the case."). A federal court sitting in diversity must apply the conflict rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Federated Rural Elec. Ins. Exchange v. R.D. Moody & Assocs.,* 468 F.3d 1322, 1325 (11th Cir.2006); *Tiller,* 2006 WL 166530, at *2. Thus, Florida's choice of law rules apply in this case.

■ Florida applies the "most significant relationship" test as set forth in the *Restatement (Second) of Conflict of Laws* (1971) to assess choice of law questions. *Bishop v. Florida Specialty Paint, Co.,* 389 So.2d 999, 1001 (Fla.1980); *Tiller,* 2006 WL 166530, at *2 (citing *Bishop,* 389 So.2d at 1001, and *Restatement (Second) Conflict of Laws* §§ 145, 146). Under this test, a court will review relevant factors and contacts to determine the state with the most significant relationship to the occurrence and the parties. *Restatement (Second) Conflict of Laws* § 145. Once the appropriate state is chosen, the laws of the appropriate state will be applied to the case. *Id.* The following factors are evaluated by courts according to their relative importance to the particular issue: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.*

■ Typically, the place where the injury occurred prompting a cause of action determines the rights and liabilities of the parties. *Restatement (Second) Conflict of Laws* § 146. However, the Supreme Court of Florida has noted that "[o]ther factors may combine to outweigh the place of injury as a controlling consideration, making the determination of applicable law a less mechanical, and more rational, process." *Bishop,* 389 So.2d at 1001. Other factors may include the following: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Restatement (Second) Conflict of Laws* § 6.

■■ A defendant cannot escape punitive damages when it is significantly connected to a forum where it does not reside or conduct most of its business. *Peoples Bank and Trust Co. v. Piper Aircraft Corp.,* 598 F.Supp. 377, 381 (S.D.Fla.1984). Otherwise, many corporations would set up their principal place of business in those states which prohibit the recovery of

punitive damages, thus undermining the policies of other states who seek to police corporate activities that harm their own citizens. *Id.* Conversely, a court does not decide the choice-of-law issue simply because one state enables a plaintiff to recover more money. *Id.* Instead, the choice of law determination is rooted in the court's evaluation of "the contact of the states with the events and the parties." *Id.*

## Discussion

■ Considering the factors set forth in the *Restatement (Second) Conflict of Laws* § 145, the following facts are significant in this case. The plaintiff is a resident of Florida, and the defendant is a Delaware corporation with its principal place of business in New Jersey. Defendant is registered to conduct business in Florida and does do so. Pamela Krause was prescribed to receive Aredia® and Zometa® treatment in Florida and accordingly she received all of her infusions of Aredia® and Zometa® in Florida. All alleged injuries occurred in Florida.

Defendant argues that although the injuries occurred in Florida, and thus compensatory damages are governed by Florida law, New Jersey has a more significant relationship to the issue of punitive damages than Florida because the conduct giving rise to the claim seeking to punish the defendant for a failure to warn occurred at its place of business. The court agrees that this factor favors application of New Jersey law on this issue, because, in relation to the issue of punitive damages, the relevant misconduct occurred in New Jersey and the place where the injury occurred is "simply fortuitous" to the failure to warn claim. *Zimmerman v. Novartis Pharm.*, 889 F.Supp.2d 757, 762–63 (D.Md. 2012). The corporate decisions with respect to labeling, packaging, and warning were made at the corporation's offices in New Jersey, and thus the conduct relevant to the claim of failure to warn or to educate dentists and other medical professionals on how to monitor and treat patients using Aredia® and Zometa®, as alleged by the plaintiff, occurred in New Jersey. *See Brown v. Novartis Pharm. Corp.*, 7:08–cv–130–FL, 2012 WL 3066588, *7 (E.D.N.C. July 27, 2012) (joining other courts in concluding that, for purposes of the choice of law determination with regard to punitive damages on a claim of failure to warn against a pharmaceutical corporation, the relevant conduct occurred in New Jersey, where the corporate decisions regarding labeling and packaging occurred).

■ Turning to the factors of Section 6 of the Restatement, the court is essentially asked to consider the nature of the contacts in light of the policy reasons underlying the law of a particular state. *See Zimmerman*, 889 F.Supp.2d at 763–64. The express purpose of punitive damages in New Jersey is "to punish the defendant and to deter that defendant from repeating such conduct," N.J. Stat. Ann. § 2A:15–5.14(a), whereas compensatory damages, by contrast, are designed to make the injured plaintiff whole, *see McDarby v. Merck & Co., Inc.*, 401 N.J.Super. 10, 949 A.2d 223, 274 (N.J.Super.Ct.App.Div.2008). *See Brown*, 2012 WL 3066588, at *7. Similarly, in Florida, punitive damages are designed to punish the tortfeasor and compensatory damages are designed to make a plaintiff whole. *See Army Aviation Heritage Found. and Museum, Inc. v. Buis*, 504 F.Supp.2d 1254, 1266 (N.D.Fla.2007); *Turner v. Creative Hospitality Ventures, Inc.*, 588 F.Supp.2d 1347, 1348 (S.D.Fla. 2008); *see also MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So.2d 221, 223 (Fla.2008) ("Compensatory damages are designed to make the injured party whole to the extent that it is possible to

measure such injury in monetary terms."). Punitive damages in Florida also serve to deter others from engaging in similar wrongful conduct. *See Arab Termite and Pest Control of Fla., Inc. v. Jenkins*, 409 So.2d 1039, 1043 (Fla.1982) ("Punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant.").

The policies of the two states diverge in this particular case because, while under New Jersey law, punitive damages have been expressly precluded in cases involving FDA-approved drugs absent a showing that the manufacturer knowingly concealed information relevant to the harm in question, *see* N.J. Stat. Ann. § 2A:58C–5;[1] *Rowe v. Hoffman–La Roche, Inc.*, 189 N.J. 615, 917 A.2d 767, 773–74 (2007) (noting New Jersey law establishes a rebuttable presumption that FDA approval is "virtually dispositive" of a failure to warn claim and punitive damages absent a showing of the manufacturer's fraud on the FDA (internal marks omitted)), Florida does not preclude punitive damages in this situation or apply a presumption that FDA approval is dispositive of a failure to warn claim. Plainly, New Jersey has the greater interest in regulating the conduct of a New Jersey business. It is significant that the New Jersey legislature made a deliberate decision to insulate New Jersey manufacturers from punitive damages after "carefully balanc[ing] the need to protect individuals against the need to protect an industry with a significant relationship to [the New Jersey] economy and

public health." *Id.* at 774. This articulated policy weighs in favor of applying New Jersey law on the issue of whether to award punitive damages against a New Jersey manufacturer.

Other courts that have applied the *Restatement (Second) Conflict of Laws* analysis in similar circumstances have chosen to apply the punitive damages law of the state in which the tortfeasor's alleged wrongful conduct occurred as having the most significant relationship. *See e.g., Chiles v. Novartis Pharmaceuticals Corp.*, 923 F.Supp.2d 1330, 3:06–cv–96–J–25–JBT, ECF No. 190, 2013 WL 539891 (M.D.Fla. February 7, 2013), *Brown*, 2012 WL 3066588, at *8; *Talley v. Novartis Pharmaceuticals Corp.*, 3:08–cv–361–GCM, 2011 WL 2559974, *4 (W.D.N.C. June 28, 2011) ("The basic policy underlying punitive damages is to punish and deter the Defendant, whose conduct occurred in New Jersey, thus the interests of the tort field are enhanced through consistent application of New Jersey law."). The court finds the reasoning articulated in these cases to be sound. Moreover, it is consistent with commentary of the Restatement, which instructs, "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Restatement (Second) Conflict of Laws* § 145, cmt. e.

Here, despite the fact that the plaintiff's injuries occurred in Florida, the alleged misconduct to be punished by a punitive damage award—that is, the defendant's decisions as to the labeling, packaging, and

---

[1]. The statutory exception that allows punitive damages under New Jersey law where the manufacturer has concealed relevant information has been held by one intermediate state court to be preempted by federal law, rendering the immunity from punitive damages absolute, *see McDarby v. Merck & Co.*, 401 N.J.Super. 10, 949 A.2d 223, 274 (2008). The court finds it unnecessary to consider the impact or reasoning of that decision for purposes of this order. The parties have not argued that punitive damages are preempted by federal law; the only issue at this juncture is which state's law applies to the punitive damages issue.

warning of the Aredia® and Zometa® drugs—occurred in New Jersey, as in the cases cited above. New Jersey has a strong policy interest in governing its corporate citizens uniformly in accordance with its articulated policy on punitive damages. Additionally, although both parties have a justified expectation to apply their respective state's law, applying Florida law to compensatory damages and New Jersey law to punitive damages in the instant case meets the justified expectations of both and helps ensure judicial certainty, predictability, and uniformity of results in tort law. Therefore, the court finds that the state with the dominant interest and most significant relationship to the issue of punitive damages in this case is New Jersey.

Accordingly, for the foregoing reasons, the motion for partial summary judgment (doc. 36) is GRANTED. New Jersey law will govern the issue of punitive damages in this case.